ENTERED AUG 1 9 2014

STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CONSOLIDATED DOCKET NOS.
AP-14-05, AP-14-07
MMM-KEN-08-14-14

RACHEL WRIGHT and
JARED MORRISON,

Petitioners,

v.

**ORDER ON RULE 80(C)
APPEAL**

STATE OF MAINE, DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

Respondent.

Before the Court are Jared Morrison's and Rachel Wright's (collectively, the "Parents")

Rule 80C Petitions seeking review of the December 19, 2013 decision by the Department of

Health and Human Services ("DHHS") upholding DHHS's substantiation finding for abuse and

neglect by the Parents of Bryce Morrison ("B.M."), born on July 6, 2010. The Parents argue that

DHHS's decision is arbitrary and capricious and not supported by substantial evidence or the

entire record.

## FACTUAL AND PROCEDURAL BACKGROUND

Jared Morrison and Rachel Wright are the parents of Bryce Morrison who resides with

them and who is now four years old. (Mother's R. Ex. C at 2.) On October 3, 2011, DHHS

received an anonymous report that the Parents' home was observed to be in a state of extreme

uncleanliness and disarray and had "an overwhelming odor of cat urine, cat feces on the floors,

bagged and loose garbage on the floors," *etc.* (Mother's R. Ex. C at 3.) The referent, an EMS

worker responding to a 911 call regarding a concern that B.M. had swallowed a penny, further

reported having observed numerous small items among the trash and debris that B.M. could

1

easily have grasped and indigested. (Mother's R. Ex. C at 3.) The referent also reported that B.M.'s face, hair, and clothing were unclean and unkempt. (Mother's R. Ex. C at 3.)

DHHS's investigation into the above allegations resulted in a determination of "unsubstantiated"[1] as the assigned caseworker found the home to be in a safe condition. (Mother's R. Ex. C at 3.) It was confirmed that the Parents' family members had cleaned the home the day prior to the caseworker's arrival. (Mother's R. Ex. C at 3.)

On March 26, 2012, DHHS received another anonymous report form a different source regarding the condition of the Parents' home, which was said to be dirty once again. (Mother's R. Ex. C at 3.) On March 26, 2012, DHHS's caseworker made an unannounced visit to the Parents' home at approximately 10:45 a.m. and observed hazards including garbage, fecal matter, vomit, cleaning chemicals, sharp objects, and coin-sized objects littering the floor of the residence and/or within easy reach of an infant or toddler, consistent with the referent's report. (Mother's R. Ex. C at 3.) The caseworker also observed that B.M. had dirt and dried food on his face, hands and clothing. (Mother's R. Ex. C at 3.) During the caseworker's visit, only one of the Parents, Jared Morrison, was home. (Mother's R. Ex. C at 3.) During her interview of Jared Morrison, the caseworker discovered that B.M. would be left alone and unsupervised in his room from 10:00 p.m. until 10:30 or 11:00 a.m. in the following morning when Mr. Morrison would generally wake up and that B.M. would be awake for one to two hours before Mr. Morrison. (Mother's R. Ex. C at 3.)

---

[1] "Unsubstantiated"—an administrative determination made by the Department of Health and Human Services that a child was not subject to "abuse or neglect." *Compare with* "substantiated"—an administrative determination made by the Department of Health and Human Services that an individual or legal entity was the person responsible for a child who was subject to "abuse or neglect" where either (1) the abuse or neglect was of high severity or (2) the individual or legal entity poses a threat of harm to children for whom the individual or legal entity may become responsible through employment or volunteer activities. 10-148 C.M.R. Ch. 201, Section V.

DHHS's caseworker arranged a safety plan for B.M. to stay with another family member until the cleanliness and safety concerns could be corrected. (Mother's R. Ex. C at 4.) She also contacted Ms. Wright and discussed her concerns based on the home visit and details of the safety plan. (Mother's R. Ex. C at 4.)

From March 28, 2012 to April 17, 2012, DHHS's caseworker interviewed a number of witnesses with knowledge of B.M.'s care and condition of the Parents' house, including William Darling, B.M.'s maternal great-uncle, with whom B.M. was arranged to stay in accordance with the safety plan, Erin Devoid, B.M.'s daycare provider, Dr. Mariscot, B.M.'s physician, Patricia Morrison, B.M.'s paternal grandmother, Thomas Morrison, paternal grandfather, Jessica Morrison, B.M.'s paternal aunt, and Andy Seymour, the Parents' housekeeper. (Mother's R. Ex. C at 4-5.) For the most part, the interviewees expressed concerns for B.M.'s cleanliness and confirmed that the Parents' home was maintained in an unsanitary and hazardous condition and that B.M. was regularly left unsupervised in his room. (Mother's R. Ex. C at 4-5.)

On April 24, 2012, DHHS sent a decision letter to the Parents informing them that DHHS substantiated them for abuse and neglect pursuant to 10-148 C.M.R. Ch. 201. (Mother's R. Ex. HO-1.) The Parents requested a "paper review" of the DHHS's substantiation decision pursuant to 10-148 C.M.R. Ch. 201, § VIII(A).[2] (Mother's R. Ex. HO-1.) On July 11, 2012, DHHS sent a letter to the Parents notifying them that the paper review resulted in a decision to uphold the original substantiation determination. (Mother's R. Ex. HO-1.)

---

[2] 10-148 C.M.R. Ch. 201, § VIII provides as follows:

Substantiated and indicated persons shall have the following rights to review of a substantiation decision.

    A.    A paper review shall be available to a substantiated or indicated person who submits a written request as required by these rules.

    B.    An administrative hearing shall be available to a substantiated person whose substantiation decision was upheld after a paper review.

3

Pursuant to 10-148 C.M.R. Ch. 201, § VIII(B), on August 12, 2013, at the Parents' request, the matter was presented for review at an Administrative Hearing to determine whether DHHS was correct when it found that the Parents subjected B.M. to abuse or neglect or failed to protect B.M. from abuse or neglect. (Mother's R. Ex. HO-1.) After a contested evidentiary hearing, the Hearing Officer issued a Recommended Decision dated October 25, 2013 stating that "a preponderance of the evidence in this case supports that [the Parents] subjected B.M. to abuse or neglect, or failed to protect B.M. from abuse or neglect, as those are defined by 22 M.R.S. § 4002(1)."[3] (Mother's R. Ex. C at 16.) The Hearing Officer also recommended that the Commissioner sustain DHHS's determination that abuse and neglect occurred. On December 19, 2013, the Commissioner adopted the Hearing Officer's findings of fact and accepted his recommended decision. It is from the December 19, 2013 decision that the Parents have taken this appeal.[4]

## STANDARD OF REVIEW

The court must affirm agency decisions unless it finds an abuse of discretion, error of law, or findings unsupported by substantial evidence from the record.[5] *Thacker v. Konover Dev.*

_____

[3] 22 M.R.S. § 4002(1) provides as follows:

"Abuse or neglect" means a threat to a child's health or welfare by physical, mental or emotional injury or impairment, sexual abuse or exploitation, deprivation of essential needs or lack of protection from these or failure to ensure compliance with school attendance requirements under Title 20-A, section 3272, subsection 2, paragraph B or section 5051-A, subsection 1, paragraph C, by a person responsible for the child.

[4] On July 8, 2014, during oral arguments, Petitioners requested that this Court consolidate their two appeals, AP-14-07 and AP-14-05. The Court granted Petitioners' request.

[5] Under the statutory iteration, the Superior Court may only reverse or modify an administrative decision if it is:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by bias or error of law;

(5) Unsupported by substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S.A. § 11007(4)(C).

*Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013 (citation and quotation marks omitted). The petitioner bears the burden of proving that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995) (citation omitted). "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982) (citation omitted). Rather, the court will defer to administrative conclusions when based on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation omitted).

To substantiate a parent for abuse or neglect in this case, DHHS must find by a preponderance of the evidence that the parent acted, or failed to act, in a manner constituting a threat to the child's health or welfare by physical, mental or emotional injury or impairment, deprived the child of essential needs, or failed to protect the child from these harms. *Kane v. Comm'r of Dep't of Health & Human Servs.*, 2008 ME 185, ¶ 20, 960 A.2d 1196, 1201 (citing 22 M.R.S.A. § 4002(1) (2004)).

## DISCUSSION

The Commissioner's December 19, 2013 decision incorporated the following findings by the Hearing Officer. First, the Parents are persons "responsible for" the child B.M. within the meaning of 22 M.R.S. § 4002(1) and 10-148 C.M.R. § 201(IV). Second, the Parents' conduct caused a threat to B.M.'s health or welfare by physical injury or deprivation of essential needs, or by lack of protection from physical injury or deprivation of essential needs, as a result of a continuing pattern of significant sanitation and safety issues in the home and inadequate attention to B.M.'s overall hygiene requirements. Finally, the Hearing Officer expressly stated that the

5

evidence before him was insufficient to support a determination as to whether B.M.'s being left alone, awake and unsupervised in his room during morning hours while Mr. Morison slept and Ms. Wright was at work, amounted to abuse and neglect of B.M. by the Parents.[6]

The Parents argue that DHHS's decision was not supported by the evidence in the record because the records before the Hearing Officer were "incomplete, inaccurate, and unreliable" and because the Hearing Officer gave more credibility to DHHS's witnesses than to the witnesses for defense.[7] Specifically, the Parents claim that certain evidence was misconstrued or should have been given more credit, or was completely disregarded.[8]

All of the Parents' claims seem to challenge the DHHS's fact-finding process. However, because of his province as a fact-finder, the Hearing Officer is permitted to discredit some testimony and give more weight to the other. *See Souther v. Concannon*, 2002 WL 1023542 (Me. Super. Apr. 5, 2002) ("Credibility determinations are 'exclusively the province of the Commission and will not be disturbed on appeal.'") (quotations omitted). Respecting the

---

[6] Although in addition to evidence of sanitation and safety issues in the Parents' home, the Hearing Officer was presented with some evidence that he found to be concerning, *e.g.*, the nature of observed interaction between Mr. Morrison and B.M., or B.M.'s behaviors suggestive of possible socialization issues and developmental delays, he did not make a finding of abuse or neglect based on this additional evidence. In fact, he declined to draw any conclusions on the issue of whether or not the parenting was the cause of these additional concerns.

[7] They also argue that the Hearing Officer "considered evidence presented outside the Hearing in question," but they do not develop this argument in their briefs or provide any support for this claim.

[8] For example, the Parents claim that Mr. Morrison's ADHD diagnosis was not taken into consideration although it explains his poor interaction with his son; the fact that B.M. did not have a bed sheet was misconstrued because B.M. pulls all of his blankets, sheets, and sometimes pillows off his bed every night; in response to the caseworker's question "Are you aware of the situation?", Ms. Wright's sister responded affirmatively meaning she was aware of the investigation, not of the safety concerns with respect to the Parents' home; the caseworker failed to interview certain witnesses who, according to the Parents, were more familiar with the state of the Parents' home than the witnesses she chose to interview, those witnesses submitted written statements, which were allegedly disregarded; Ms. Wright's employer confirmed that Ms. Wright was sick prior to the caseworker's visit what explains the condition of the home; the answers of the interviewed witnesses were skewed by their knowledge of the investigation or by the caseworker herself; the caseworker did not interview B.M.'s physician directly but based her case on B.M.'s medical records, which were also misconstrued; the photographs of the state of the Parents' home taken by the caseworker do not support the substantiation charge because they do not prove that the allegedly dangerous items were within B.M.'s reach; *etc.*

6

constitutional separation of powers, Me. Const. art. III, and statutes governing administrative appeals, the Court's review of state agency's fact-finding and discretionary decision-making is deferential and limited. *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128, 1133. In this Court's review of the testimony and exhibits in the administrative record, "[t]he court shall not substitute its judgment for that of the agency on questions of fact." 5 M.R.S.A. § 11007(3). This Court must affirm findings of fact if they are supported by "substantial evidence in the record," even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency. *Aviation Oil Co. v. Dep't of Envtl. Prot.*, 584 A.2d 611, 614 (Me. 1990). The "substantial evidence" standard does not involve any weighing of the merits of evidence, rather this Court is required only to determine whether there is any competent evidence in the record to support a finding. *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 14, 989 A.2d 1128. Administrative agency findings of fact will be vacated only if there is no competent evidence in the record to support a decision. *Id.*

This Court's review of the record reveals substantial evidence to support DHHS's substantiation finding. Moreover, some of the evidence alleged by the Parents to have been improperly excluded or misconstrued was irrelevant to the narrow finding by the Hearing Officer that the Parents' conduct constituted abuse and neglect because of a continuing pattern of significant sanitation and safety issues.[9]

---

[9] For example, the fact that Mr. Morrison has ADHD is relevant in explaining his poor communication with B.M., but irrelevant in deciding whether or not the Parents' home was maintained in an unsanitary or unsafe condition.

The entry will be:

Petitioners' appeal from the Commissioner's December 19, 2013 decision is **DENIED.**

_8/14/14_

**DATE**

_[signature]_

**SUPERIOR COURT JUSTICE**

8

Action: <u>Petition for Review</u>                    **J.Murphy**
           80C


Jarad Morrison                                  Department of Health and Human Services
                                    vs.         Mary Mayhew, Commissioner

---

Plaintiff's Attorney                            Defendant's Attorney

Jarad Morrison, Pro Se                          Nora Sosnoff, AAG
175 Beaver Dam Road                             6 State House Station
North Waterboro, ME 04016                       Augusta, ME 04333


Date of Entry

---

2/3/14      Petition For Review Of Final Agency Action, filed (1/30/14). s/Morrison, Pro Se

2/5/14      Return Service for Parties in Interest Janet Mills, Michele Lumbert, Sarah Groom, DHHS,
            Debra White, DHHS, Mary Mayhew, Commissioner, Rebecca Austin, DHHS, Glenda
            Hamilton, DHHS, filed. s/Morrison, Pro Se

2/11/14     Entry of Appearance for Mary Mayhew, Commissioner, filed. s/Sosnoff, AAG

2/21/14     Certified Record, filed. s/Sosnoff, AAG

2/21/14     Notice and Briefing Schedule issued. Copy to Morrison, Pro Se, and Sosnoff, AAG.

4/2/14      Brief, filed 4/1/14. s/Morrison, Pro Se

4/24/14     Brief of the Appellee, filed 4/18/14. s/Sosnoff, AAG

6/17/14     Oral argument scheduled 7/8/14 at 1:00.
            Notice of hearing sent to Petitioner and AAG Sosnoff

7/2/14      Oral argument rescheduled to 2:30 on 7/8/14.
            Amended Notice of hearing sent to Petitioner and AAG Sosnoff

7/3/14      Consent and Approval for Student Attorney Appearance, filed. s/Gannon, AAG

7/9/14      Oral argument held 7/8/14. J. Murphy
            Petitioner, AAG Gannon, and student extern Brittany Sawyer appeared.
            Tape 1902, Index 3812-5695
            Matter to be consolidated with AP-14-07.
            Under advisement.

8/14/14      ORDER ON RULE 80(C) APPEAL, Murphy, J.
Petitioners' appeal from the Commissioner's December 19, 2013 decision is DENIED.
Copy to Petitioner and AAG Sosnoff
Copy to repositories.

8/14/14      Notice of removal of record mailed to AAG Sosnoff.

Date Filed 2/6/14              Kennebec              Docket No. AP-14-07 F
                              County

Action: <u>Petition for Review</u>                    **J. Murphy**
          80C


Rachel Wright              vs.              Department of Health and Human Services
                                            Mary Mayhew, Commissioner

---

Plaintiff's Attorney                          Defendant's Attorney

Rachel Wright, Pro Se                         Nora Sosnoff, AAG
175 Beaver Dam Road                           6 State House Station
North Waterboro, ME 04016                     Augusta, ME 04333


Date of Entry

---

| 2/6/14 | Petition For Review Of Final Agency Action, filed (1/30/14). s/Morrison, Pro Se |
|---|---|
| 2/6/14 | Return Service for Parties in Interest Janet Mills, Sarah Groom, DHHS, Debra White, DHHS, Mary Mayhew, Commissioner, Rebecca Austin, DHHS, Glenda Hamilton, DHHS, filed. s/Wright, Pro Se |
| 2/11/14 | Entry of Appearance for Mary Mayhew, Commissioner, filed. s/Sosnoff, AAG |
| 2/21/14 | Certified Record, filed. s/Sosnoff, AAG |
| 2/21/14 | Notice and Briefing Schedule issued. Copy to Morrison, Pro Se, and Sosnoff, AAG. |
| 4/2/14 | Brief, filed 4/1/14. s/Wright, Pro Se |
| 4/24/14 | Brief of the Appellee, filed 4/18/14. s/Sosnoff, AAG |
| 6/17/14 | Oral argument scheduled 7/8/14 at 1:30. Notice of hearing sent to Petitioner and AAG Sosnoff |
| 7/2/14 | Oral argument rescheduled to 3:00 on 7/8/14. Amended notice of hearing sent to Petitioner and AAG Sosnoff |
| 7/3/14 | Consent and Approval for Student Attorney Appearance, filed. s/Gannon, AAG |
| 7/9/14 | Oral argument held 7/8/14. J. Murphy Petitioner, AAG Gannon, and student extern Brittany Sawyer appeared. Tape 1902, Index 3812-5695 Matter to be consolidated with AP-14-05. Under advisement. |

8/14/14    ORDER ON RULE 80(C) APPEAL, Murphy, J.
           Petitioners' appeal from the Commissioner's December 19, 2013 decision is DENIED.
           Copy to Petitioner and AAG Sosnoff
           Copy to repositories.

8/14/14    Notice of removal of record mailed to AAG Sosnoff.